# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| EMSAT ADVANCED GEO-LOCATION TECHNOLOGY, LLC, and LOCATION BASED SERVICES LLC, § § § § § § § § § § § § § § § | |
| Plaintiffs, | C.A. No. 2:08-cv-381 |
| v. | JURY TRIAL DEMANDED |
| METROPCS COMMUNICATIONS, INC., METROPCS WIRELESS, INC., CENTENNIAL COMMUNICATIONS CORP., LEAP WIRELESS INTERNATIONAL, INC., CRICKET COMMUNICATIONS, INC., ETEX TELEPHONE COOPERATIVE INC., and ETEX COMMUNICATIONS, L.P., | |
| Defendants. | |

**CENTENNIAL COMMUNICATIONS CORP.'S SUR-REPLY
IN SUPPORT OF ITS PROPOSED CLAIM CONSTRUCTIONS**

# TABLE OF EXHIBITS[1]

| | |
|---|---|
| Exhibit 45 | Deposition of Richard Chandler, *EMSAT Advanced Geo-Location Technology, LLC and Location Based Services LLC v. AT&T Mobility, LLC d/b/a Cingular Wireless LLC,* Case No. 4:08-CV-00822 (N.D. Ohio) |
| Exhibit 46 | Plaintiffs' Preliminary Claim Constructions, *EMSAT Advanced Geo-Location Technology, LLC and Location Based Services LLC v. AT&T Mobility, LLC d/b/a Cingular Wireless LLC,* Case No. 4:08-CV-00822 (N.D. Ohio) |
| Exhibit 47 | Plaintiffs' Response to Office Action, '822 Reexamination, Control No. 95/001,238 |
| Exhibit 48 | Exhibit 1 to Plaintiffs' Response to Office Action, '822 Reexamination, Control No. 95/001,238 |
| Exhibit 49 | Decision Denying Petition, '822 Reexamination Appeal, Control No. 90/010,477 |

---

[1] The exhibits to this brief are numbered to follow sequentially after the exhibits in Defendants' Responsive Brief (D.I. 138).

I.      INTRODUCTION

Plaintiffs raise entirely new arguments in their Reply in Support of Plaintiffs' Claim Constructions ("Reply Brief").  (Dkt. 150).  Because Plaintiffs' new positions are contradictory and incorrect, Centennial Communications Corp. ("Centennial") files the present sur-reply.

II.     ARGUMENT

   A.      "Exact Geographic Location"

In their Reply Brief, Plaintiffs take the untenable and inconsistent position that "exact," as used in the asserted claims, has no relationship to accuracy or precision.  Instead, Plaintiffs argue that "exact" was added to the asserted claims merely to indicate that a geographic location must be expressed in a particular *format*.  Plaintiffs' position leads to the following nonsensical result:  If the geographic location is expressed in a particular format – latitude and longitude – it is an "exact geographic location" even though it may be wildly inaccurate and terribly imprecise.  That position flies in the face of the plain meaning of the claim language, the specifications and prosecution histories of the asserted patents, and Plaintiffs' *own construction*.

      1.      Plaintiffs Ignore the Critical Claim Language

Plaintiffs argue that the benchmark for the term "exact geographic location" is:

> the use of a position determining system that provides the position of the mobile unit *by rendering its latitude and longitude*.  This is the objective standard.  The focus is on whether or not an attempt is being made to calculate the *latitude and longitude* of the mobile unit, and *not the calculation's degree of accuracy*.

(Dkt. 150 at 4 (emphasis added)).  But that "objective standard" has nothing to do with the critical word at issue, "exact."

The format of position information is wholly unrelated to its exactness.  As an example, consider two hypothetical position determining systems, A and B, that provide location in latitude and longitude but are incapable of locating a mobile unit with perfect mathematical

exactness.  System A might accurately identify someone located at 100 East Houston Street in Marshall as being at 32° N 94° W latitude and longitude.  But Waskom, Beckville, and Jefferson, Texas are *also* located at 32° N 94° W.  Although this position information is accurate, it is not sufficiently precise to be useful in the context of the patents.  Similarly, System B might calculate the latitude and longitude of someone at the Federal Courthouse in Marshall to be 32° 28' 43.5498" N and 94° 3' 34.6674" W.  While that position information would be precise, it is not accurate – those coordinates actually place the person directly in the middle of Waskom, again rendering the information all but useless in the context of the patents.  Both position determining systems A and B "attempt . . . to calculate the latitude and longitude of the mobile unit," but neither provides an *exact* geographic location.  Plaintiffs' argument that a format bears any relation to exactness fails completely.

Plaintiffs state that the applicants "did not invent . . . a better or more precise system for locating a mobile unit.  They invented – as the intrinsic record makes clear – a system that <u>uses</u> the location of the mobile unit."  (Dkt. 150 at 1).  While Centennial agrees that the applicants did not invent a "better or more precise system," Plaintiffs' mischaracterization of the claims is both misleading and telling, as Plaintiffs omit the very word at the heart of this claim construction dispute: "exact."  Whatever applicants originally thought they invented, they were only allowed to claim systems that determine the "*exact* geographic location" of the mobile unit.  Thus they amended their claims during prosecution, not to require "a geographic location in latitude and longitude" or "positional coordinates," but to require an "*exact* geographic location."

By arguing that the term "exact geographic location" merely refers to the format of the location, Plaintiffs attempt to read the word "exact" out of the claim altogether.  While this position is consistent with Plaintiffs' other attempts to excise the word "exact" from the claims, it

is fatally inconsistent with Plaintiffs' own construction.[2] Plaintiffs use the words "typical of" and "or other positioning determining system" in an attempt to bring locations generated by *any* position determining system having *any* degree of accuracy and precision within the claims, thus entirely eliminating any exactness requirement. And although Plaintiffs' construction may give the illusion of acknowledging the limited scope of the term (referring to "a degree of accuracy and precision" and to GPS and LORAN), it is ultimately unbounded. (*See* Dkt. 138 at 14-15).

### 2. Plaintiffs' Position Is Contrary to the Intrinsic Record

To support a claim construction position contrary to the plain language of a claim, plaintiffs must present compelling evidence that the applicants intended to depart from the ordinary meaning of the language. *See, e.g., Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005) ("When a patentee acts as his own lexicographer in redefining the meaning of particular claim terms away from their ordinary meaning, he must clearly express that intent in the written description."). Plaintiffs have made no such showing here. Rather, Plaintiffs cobble together three separate passages in the 1991 Application, arguing that the applicants "specifically coined and defined 'exact geographic location.'" These state that the position determining system should be able to "generate precise and accurate location data," that the location "be reduced to a 'position in longitude and latitude,'" and that the location should be determined using a GPS, LORAN, "or other position determining system." These passages most assuredly do not suggest, much less "clearly express," an intent to depart from the plain and ordinary meaning of the term "exact." *See Merck*, 395 F.3d at 1370-71. Indeed, all three of these passages tend to support the common-sense meaning of "exact" and the first passage

---

[2] Plaintiffs' construction for the term "exact geographic location" is "a position in latitude and longitude having a degree of accuracy and precision typical of that obtained from a Global Positioning System (GPS), LORAN, or other position determining system." By its own terms, that construction requires "a degree of accuracy and precision" in addition to expression in the attitude/longitude format.

*requires* it. These statements thus cannot justify a departure from the ordinary meaning of the claim language, and Plaintiffs' arguments to the contrary must fail.

In fact, Plaintiffs' improper conflation of format and exactness is flatly contradicted by the specifications of the asserted patents and their prosecution histories. Referring to suitable position determining systems, the specification explicitly states that "precise and accurate locational data" is *required*. (Ex. 1, '611 Patent, 5:63-65 ("All that is required is that the source of positional data be able to generate precise and accurate locational data on a fixed or a rapidly moving object.")). Plaintiffs' position that the claimed "exact geographic location" implies no degree of accuracy at all is directly contradictory.

Finally, Plaintiffs' position is inconsistent with the prosecution history. When faced with rejection over the Schaible and Comroe patents, the applicants acknowledged that they were "not claiming as the invention the concept of knowing where a mobile unit is *per se*, but [were] claiming a means and a method that has a data storage means in an MTSO that matches the exact geographic location of a mobile unit to a cell site." (Ex. 9, Oct. 1992 Resp. to Office Action, at 6 (emphasis in original)). Thus, to overcome the rejection, the applicants amended the claims to require an *exact* geographic location, rather than a location in latitude and longitude.

Plaintiffs now argue that Schaible and Comroe were not distinguished because they provided *inexact* geographic locations, but because they did not provide geographic locations at all – they merely provided *indications* of location.[3] This is a distinction without a difference. According to Plaintiffs, the asserted patents themselves contemplate a degree of error (Dkt. 130

---

[3] Plaintiffs allege that "Defendants admit that the prior art techniques of Schaible and Comroe merely estimate the distance between mobile unit and cell tower . . ." (Dkt. 150 at 5). As support, Plaintiffs cite the following footnote from Defendants' Responsive Claim Construction Brief: "Determining location based on cell site can mean several different things, but essentially involves deriving the location of the mobile unit based on its proximity to a cell site. . ." (Dkt. 138 at 13, n. 7). Plaintiffs thus mischaracterize Defendants' statement, which expressly states that *location* is derived.

at 9), so they also teach only "indications of location." Indeed, any location information that is not perfectly exact merely provides an indication of location. Plaintiffs' characterization of the disclaimed prior art techniques as different in kind from GPS and LORAN is belied by the specifications of the '404, '822, and '763 Patents, which group GPS, LORAN, and signal strength together, stating that all three methods generate not only "geographic locations," but "exact geographic locations." (Ex. 2, '404 Patent, 11:20-28).

### 3. Plaintiffs' Position is Inconsistent with Plaintiffs' Own Statements

Contrary to their current position, Plaintiffs previously acknowledged that an "exact geographic location" is constrained by accuracy and precision limitations. In their Opening Brief, Plaintiffs argued that their construction "provides an objective benchmark of the *accuracy and precision* required of 'exact geographic location.'" (Dkt. 130 at 10 (emphasis added)). Plaintiffs' Reply Brief similarly states, "Plaintiffs' construction captures these expressed aspects of 'exact geographic location,' namely (i) a position in latitude and longitude and (ii) an *accuracy and precision* typical of GPS or similar system." (Dkt. 150 at 2 (emphasis added)). These statements are irreconcilable with Plaintiffs' position that any location in latitude and longitude is an "exact geographic location" regardless of its accuracy or precision.

Plaintiffs apparently attempt to resolve this contradiction by arguing that the applicants intended the term "exact geographic location" to impose two requirements: 1) that the location be "derived" by certain systems, and 2) that the location be "expressed" in terms of latitude and longitude. But unless the method by which the location is "derived" implies some degree of accuracy and precision, this construction *still* eliminates the concept of "exactness" from the claims. And Plaintiffs' construction imposes no limitations whatsoever on the type of system that should be used to "derive" the "exact geographic location." Thus, while Plaintiffs suggest that the applicants limited the claims to locations derived by certain position determining

systems, that amounts to no limitation at all in light of Plaintiffs' unbounded construction and recent statements that "[t]he focus is . . . not [on] the calculation's degree of accuracy." (Dkt. 150 at 4). When scrutinized, even this creative but unsupported position reduces to the argument that exactness means a format, entirely divorced from any notion of accuracy and precision.

B. "Subsequent Services"

1. Plaintiffs Cannot Say What "Subsequent Services" Means

Over the course of a year, Plaintiffs first argued that "subsequent services" meant "a service that obtains the recorded exact geographic location and mobile unit identification after completion of the communication process that recorded them." (Dkt. 123; Ex. 46, Pls.' Prelim. Claim Constructions; *EMSAT Advanced Geo-Location Technology, LLC and Location Based Services LLC v. AT&T Mobility, LLC d/b/a Cingular Wireless LLC,* Case No. 4:08-CV-00822 (N.D. Ohio) ("AT&T Case")). In their Opening Brief, however, Plaintiffs reversed course and advocated an entirely new construction: "a service occurring during a call in progress, including emergency 911, taxes, communication process rating, message unit, customer service frequency selection, changing frequencies, changing cell site (handover) and changing cell system." (Dkt. 130 at 12). Plaintiffs argued that this change was made "to more accurately reflect the term's meaning based on the intrinsic record and to otherwise resolve any potential ambiguity caused by terminology." (*Id.*). In deposition, Plaintiffs' expert testified that their second construction was correct (Ex. 45, p. 234, l. 22 - p. 235, l. 4), and that their original construction has "something of an ambiguity" (Ex. 45, p. 237, l. 3-10) and was intended "to classify subsequent services as those being provided during the call" (Ex. 45, p. 237, l. 24 - p. 238, l. 10).

On May 17, less than two months after abandoning their original construction, Plaintiffs *returned* to it, disparaging their second construction. In reexamination proceedings for the '822 Patent, Plaintiffs told the PTO that the Examiner's construction of "subsequent services," which

was identical to Plaintiffs' second construction, was now "***incorrect***."  (Ex. 47, p. 16).  Plaintiffs argued instead that their original construction was once again the correct one.

Incredibly, Plaintiffs now attempt to defend ***both*** constructions simultaneously.  (Dkt. 150 at 8 (arguing that "Plaintiffs [second] construction is the result of a measured assessment of the intrinsic record" and that "developments since Plaintiffs' Opening Brief indicate that Plaintiffs' originally-proposed construction is proper."))  Despite owning the asserted patents for several years and actively litigating them for more than two years, Plaintiffs are still unsure what this key claim term means.  Plaintiffs' confusion counsels against the adoption of either of their contradictory constructions and strongly suggests that this term is indefinite.

### 2. Plaintiffs' Competing Constructions are Contradictory

Setting aside the problems with simultaneously proposing two constructions, Plaintiffs' two constructions are also directly at odds with each other.  Plaintiffs' original construction of "subsequent services" is "a service that obtains the recorded exact geographic location and mobile unit identification after completion of the communication process that recorded them."  This construction thus sets "the completion of the communication process" as a dividing line, defining "subsequent services" as services occurring ***after*** that event has taken place.  So, for example, a service obtaining the "exact geographic location" four hours after the completion of a communication process would apparently fall within the scope of Plaintiffs' construction, but one that obtains the "exact geographic location" two seconds before the communication process is completed would not.

Plaintiffs' second construction is "a service occurring during a call in progress, including emergency 911, taxes, communication process rating, message unit, customer service frequency selection, changing frequencies, changing cell site (handover) and changing cell system."  This construction marks the duration of "a call in progress" as the dividing line, sweeping in services

occurring *before* that call ends.  Here, a service provided during a four-hour phone call would apparently fall within the claims, but one provided two seconds after that call would not.

These two constructions seek opposite results:  The original construction would cover services ***after*** a call ends, while the second construction would cover services ***before*** a call ends.  Putting aside the questions raised by Plaintiffs' earlier flip-flopping, Plaintiffs' current attempt to advocate both constructions demonstrates both that Plaintiffs cannot determine the meaning of "subsequent services" and that their approach to claim construction is flawed.  If Plaintiffs themselves cannot determine whether "subsequent services" refers to services during a call or after it, the public cannot either, and the claims are invalid.

Plaintiffs' waffling casts severe doubt on both of their constructions.  Although Plaintiffs refer to their second construction as their "current construction" in their Reply Brief, they state that "developments since Plaintiffs' opening brief indicate that Plaintiffs' originally-proposed construction is proper."[4]  (Dkt. 150 at 8).  The proper construction of a term claiming priority to 1991, however, does not change month-to-month in 2010.  *See PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005) ("A claim cannot have different meanings at different times; its meaning must be interpreted as of its effective filing date.")

### 3.  Plaintiffs' Original Construction Is Incorrect

Plaintiffs admit that their original construction does not "accurately reflect the term's meaning based on the intrinsic record." (Dkt. 130 at 12, n.6).  Plaintiffs even told this Court that

---

[4] Plaintiffs argue that, during an appeal of one reexamination request relating to the '822 Patent, the PTO concluded "that Plaintiffs' original construction is . . . the correct construction." (Dkt. 150 at 9).  That statement is wrong on its face.  The PTO statement was that:  "the claimed 'subsequent service' is adequately supported by the providing of cellular service.  This is consistent with the broadest reasonable interpretation of the term 'subsequent services' and with the patent owner's construction of 'subsequent service.'"  (Ex. 49, Decision Denying Petition, '822 Reexamination Appeal, at 6).  The PTO thus merely argued that, were Plaintiffs' construction to be adopted, it would be "adequately supported by the providing of cellular service."  The PTO did not conclude that Plaintiffs' construction was the right construction, even under the "broadest reasonable interpretation standard."

the intrinsic support cited during reexamination of the '822 Patent "clearly establishes that 'subsequent services' are those occurring <u>during</u> a call in progress," rather than ***after*** the communication process as required by Plaintiffs' original construction.[5]  (*Id*. at 15 (emphasis in original)).

Plaintiffs have identified other flaws with their original construction as well.  Plaintiffs now admit that their original construction is ambiguous.  (Dkt. 150 at 6; Dkt. 130 at 12, n.6) (Plaintiffs adopted their second construction, in part, "to resolve any potential ambiguity caused by terminology used previously.").  Their expert agreed.  (Ex. 45, Chandler Deposition at p. 237, l. 3-10 (". . . I think the person skilled in the art would -- would recognize something of an ambiguity . . . with this previous construction"); p. 238, l. 11-15; p. 240, l. 3-11).  Their expert also stated that it was Plaintiffs' intention to limit their original construction to services provided ***during*** a call, not after it:  "I believe that the intent was to -- to classify subsequent services as those being provided during the call."  (Ex. 45, Chandler Deposition at 238, l. 8-10).  This "intent" certainly does not appear in Plaintiffs' original construction, and the construction is therefore misleading and defective.

Additionally, Plaintiffs' original construction fails to clarify the scope of the term "services."  As discussed in Defendants' Responsive Brief, the term "service" has so many meanings as to make it useless to define an invention.  (Dkt. 138 at 20-24).  It is from the context of the patent that one of skill in the art must determine the scope of the services claimed.  *See Phillips,* 415 F.3d at 1315.  The term "subsequent services," however, is ***not*** in the specification. The closest language is "post communication process subscriber service," which appears in

---

[5] Plaintiffs made similar statements before Judge Adams in Ohio:  "Thus, based on the inventors' clear and unambiguous statements in the prosecution history, a person skilled in the art would understand that the phrase 'subsequent services' refers to services that are provided after exact geographic location has been obtained, and during a call in progress."  (Pls.' Resp. Claim Constr. Br., *EMSAT Advanced Geo-Location Tech., LLC, et al. v. AT&T Mobility LLC, et al.,* No. 4:08-CV-822 (N.D. Oh. 2008) (D.I. 127 at 11)).

reference to block 113 ("customer service") on the right side of Figure 8. In fact, all of the services identified on the right side of Figure 8 are provided to a subscriber. Accordingly, one skilled in the art would readily understand that "subsequent services" means subscriber services (*i.e.*, services provided to the wireless service provider's customers) occurring after the communication process between the network and the mobile unit has ended.

### 4.    Plaintiffs' Second Construction Is Also Incorrect

Plaintiffs' continued loyalty to their second construction is equally indefensible. Only four days before filing their Reply Brief, Plaintiffs told the PTO "the Examiner's construction of 'subsequent services,' which Plaintiffs adopted verbatim as their second construction, "***is incorrect***." (Ex. 47, Pls.' Resp. to Office Action, '822 Reexamination, at 16 (emphasis added)). Plaintiffs continued: "Nowhere in the claim language itself, the specifications, nor even in the portion of the December 29, 2003 Office Action response cited by the Examiner, does it require that the 'subsequent service' occur during the call." (*Id*. at 19-20). Plaintiffs even attached the declaration of their second expert, Randall Snyder, who disagreed with their first expert Richard Chandler and rejected Plaintiffs' second construction. (Ex. 48, Exhibit 1 to Pls.' Resp. to Office Action, '822 Reexamination, at 4-5). The parties thus agree that Plaintiffs' second construction is incorrect, and the Court should reject that construction as well.

### III.    CONCLUSION

Plaintiffs have proven unable to advocate consistent or defensible constructions for the terms "exact geographic location" and "subsequent services." Centennial respectfully requests that the Court find the term "exact geographic location" indefinite and adopt Centennial's proposed construction of the term "subsequent services."

| | |
|---|---|
| Dated: June 4, 2010 | By: */s/ Chris Kennerly* |

                                          Bryant C. Boren, Jr., Lead Attorney
                                          State of Texas Bar No. 02664100
                                          Email: bryant.c.boren@bakerbotts.com
                                          Chris Kennerly
                                          State of Texas Bar No. 00795077
                                          Email: chris.kennerly@bakerbotts.com
                                          Kevin E. Cadwell
                                          Email: kevin.cadwell@bakerbotts.com
                                          State of Texas Bar No. 24036304
                                          Joshua J. Parker
                                          State of Texas Bar No. 24056092
                                          Email: josh.parker@bakerbotts.com

                                          BAKER BOTTS L.L.P.
                                          620 Hansen Way
                                          Palo Alto, CA 94304
                                          Telephone: 650.739.7500
                                          Facsimile: 650.739.7604

                                          **ATTORNEYS FOR DEFENDANT CENTENNIAL COMMUNICATIONS CORP.**

**CERTIFICATE OF SERVICE**

      I certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF System per Local Rule 5.3.

                                            /s/     *Joshua Parker*